666 So.2d 1290 (1996)
Louella D. MAYO, et ux, Plaintiffs-Appellants,
v.
AUDUBON INDEMNITY INSURANCE COMPANY, et al, Defendants-Appellees.
Nos. 26767-CA, 27862-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1996.
*1291 Charles S. Norris, Jr., Hodge O'Neal, III, Monroe, for appellants.
Crawford & Anzelmo by Brian E. Crawford, Susan N. Belsom, Monroe, for appellees.
Before SEXTON and STEWART, JJ., and PRICE, J. Pro Tem.
SEXTON, Judge.
This is an appeal from two conflicting verdicts arising out of the same trial, one verdict rendered by judge and the other by jury. The jury found no liability on the part of the defendant insurer, Audubon Indemnity Insurance Company, for the alleged negligence and strict liability of the insured, the Housing Authority of the Parish of Caldwell. The judge found that the Housing Authority was 20 percent at fault in enhancing the injuries that led to the death of the victim and found that the general and special damages amounted to $175,625. The plaintiffs appeal, alleging, among other assignments of error, that the trial court erred in allowing the jury to decide the liability of the Housing Authority in the suit against Audubon, inasmuch as *1292 LSA-R.S. 13:5105 prohibits a jury trial in a suit against the state, a state agency or a political subdivision of the state.
The facts of this case are not complex. Mrs. Edail Dupreast fell in her apartment and broke her hip sometime between the delivery of the Wednesday meal by the "Meals on Wheels" program on September 4, 1991, and Friday, September 6, 1991, when she was discovered in a critical state where she had fallen. Upon discovery of the incident, she was transferred to Caldwell Memorial Hospital and later to St. Francis Regional Medical Center where she died on September 8, 1991.
Mrs. Dupreast had been a resident of the Housing Authority since 1979. Suffering from obesity and arthritis, Mrs. Dupreast, who was elderly and infirm, lived in the handicapped section of the Housing Authority. When Mrs. Dupreast did not answer her door for two days to receive her meal, the "Meals on Wheels" employee notified employees of the Housing Authority.
The heirs of Mrs. Dupreast brought wrongful death and survivor actions against the Housing Authority alleging that it failed to timely discover and assist Mrs. Dupreast, causing her to suffer increased pain and decreasing her chance of survival. The defendants requested a jury trial. The plaintiffs filed a motion to strike the jury trial for the Housing Authority, and requested a bifurcated trialthe judge to decide the issues related to the Housing Authority and a jury to decide the issues related to its insurer, Audubon. The motion was granted.
After trial of the case, the jury rendered a verdict by responding "No" to an interrogatory asking if the jury found any fault on the part of the Caldwell Housing Authority. A judgment incorporating the jury's verdict was signed on January 31, 1994. Plaintiffs devolutively appealed this judgment and subsequently filed a motion for stay of the appeal pending the judgment of the trial court. The trial court rendered a verdict assessing the Caldwell Housing Authority with 20 percent fault, finding that the Housing Authority had a narrow duty to monitor Mrs. Dupreast. Under a comparative fault analysis, the trial court concluded that Mrs. Dupreast and her children were 80 percent at fault. Both the plaintiffs and defendants appealed this judgment, which was consolidated with the first appeal.
Plaintiffs contend, in their first assignment of error, that the trial court erred in allowing the jury to decide this question, even though the liability of Audubon is premised on the liability, if any, of the Housing Authority.
Plaintiffs' second assignment of error contends that the trial court erroneously failed to instruct the jury on the duty of the Caldwell Housing Authority to Mrs. Dupreast. They contend that the court allowed the jury to decide both the existence of the duty and its breach.
Third, plaintiffs contend that the court erroneously decided that Mrs. Dupreast and her children were comparatively at fault. The trial court found that monitoring devices were available to the general public. Mrs. Dupreast as well as her children had a duty to monitor her condition, and all had decided not to purchase such a device. Nevertheless, the trial judge found that the Housing Authority was also partially at fault because its employees were aware of Mrs. Dupreast having some history of falling.
Fourth, plaintiffs allege that the trial court erred in assigning 80 percent fault on the part of the children and Mrs. Dupreast because comparative fault was not pled in defendant's answer.
Finally, the plaintiffs contend that the trial court erred in awarding only $50,000 for pain and suffering by Mrs. Dupreast prior to her death.
The threshold question in this case is what is the proper standard of review in a bifurcated case where the jury and trial judge render inconsistent verdicts. We conclude that under these circumstances the appropriate standard of appellate review is de novo.
We are persuaded in this conclusion by our former Chief Judge Hall's concurring opinion in Smiley v. Sikes, 543 So.2d 1084 (La.App. 2d Cir.1989), and his review therein of the merit of other circuits' resolution of this question. We are likewise persuaded by a *1293 long line of fourth circuit cases so holding. See, e.g., Clement v. Griffin, 91-1664 (La. App. 4th Cir. 3/3/94), 634 So.2d 412; McCullough v. Regional Transit Authority, 593 So.2d 731 (La.App. 4th Cir.1992); Justin v. City of New Orleans through Morial, 499 So.2d 629 (La.App. 4th Cir.1986). Cf. Stapleton v. Great Lakes Chemical Corp., 627 So.2d 1358 (La.1993).
Also, particularly persuasive is the supreme court's action in Beoh v. Watkins, 94-1086 (La. 6/24/94), 640 So.2d 1325, setting aside the judgment of the court of appeal that affirmed the trial court's use of the jury findings of fault and quantum to render the trial court judgment against the public body in a bifurcated trial. The supreme court adopted Judge Landrieu's dissent to the majority opinion which had deviated from the aforesaid fourth circuit jurisprudence. Beoh v. Watkins, 93-1394 (La.App. 4th Cir. 3/29/94), 635 So.2d 424 (Landrieu, J., dissenting at 428).
Accordingly, we will review the record de novo. Plaintiffs' assignments of error are therefore rendered moot by this determination.
Liability in this case turns on whether the Caldwell Housing Authority breached a duty owed to Mrs. Dupreast which caused the injuries she suffered from the fall in her apartment to worsen, thereby diminishing her chances of survival, or increasing her pain and suffering. The issue, then, is whether the housing authority owed Mrs. Dupreast a duty check on her with such frequency that such injury-worsening circumstances would not occur.
Plaintiffs base their contention that the Housing Authority owed a duty to check on Mrs. Dupreast on two grounds. First, plaintiffs contend that Mrs. Dupreast had fallen on previous occasions and received assistance from employees of the Housing Authority. Therefore, they argue that a duty arose from the Housing Authority's knowledge of Mrs. Dupreast's condition and propensity to fall. They further contend that Mrs. Dupreast had come to rely on the employees of the Housing Authority for assistance in that regard.
Second, plaintiffs contend that the defendant had a contractual duty to Mrs. Dupreast to provide for her health and safety in this respect by virtue of the lease agreement.
Before turning to the question of whether the housing authority had a general duty to monitor Mrs. Dupreast's condition, we first consider plaintiffs' contractual duty theory. The duties of the lessor (the Parish Housing Authority) are set forth in the lease agreement. Plaintiffs claim that a contractual duty arises out of the following provisions in the lease:
The PHA's obligations are as follows:
(1) To maintain the premises and the project in a decent, safe and sanitary condition;
(2) To comply with requirements of applicable building codes, housing codes, and HUD regulations materially affecting health and safety.
A written statement of HUD policies governing admission and occupancy of these projects was also submitted into evidence, which we quote in pertinent part:
It is the intent of the Authority to meet the needs and to ensure decent, safe, and sanitary housing which provides suitable living environment....
(Section 1.0)
A housing unit is dilapidated if it does not provide safe and adequate shelter, and its present condition endangers the health, safety, or well-being of a Family....
(Section 2.29H)
Plaintiffs contend that these statements and lease provisions provide a basis for the court to find a contractual duty on the part of the Caldwell Housing Authority to monitor Mrs. Dupreast.
We find that none of these provisions avail the plaintiffs' position. The lease provisions obviously deal with the physical condition of the premises and have nothing with employee care of handicapped or elderly tenants. Moreover, there is nothing in the HUD regulations that would require the installation of monitoring devices for the health and safety of elderly or infirm tenants. Significantly, we find no provision in these HUD/Housing *1294 Authority guidelines to indicate that the purpose and scope of the housing projects, which is to provide decent, low-rent housing, extends to individual care for the elderly and infirm, as in the case of nursing homes.
We turn now to the question of whether the Caldwell Housing Authority had a duty to monitor Mrs. Dupreast on a regular basis to avoid the injury-worsening circumstances involved in this case. Plaintiffs contend that the duty arises because Mrs. Dupreast had come to rely on employees of the Housing Authority to assist her in the event she had fallen. Testimony from employees of the Housing Authority indicate that Mrs. Dupreast definitely had fallen on one previous occasion and possibly on another. On the occasion of which the employee was sure about, Mrs. Dupreast was able to obtain help by getting to a telephone. In other words, the assistance she obtained had nothing to do with her relying on employees of the housing authority to monitor her on a regular basis in order to discover whether she had fallen. Her reliance on the employees of the Housing Authority was to assist her in getting up after she had fallen.
In order to prevail in a negligence claim, a plaintiff has the burden of proving that (1) the defendant had a duty to conform his conduct to a specific standard, (2) the defendant failed to do so, (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries, (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries, and (5) actual damages to the plaintiff occurred. A threshold issue then in any negligence action is whether the defendant owed the plaintiff a duty. This issue is a legal question. Meany v. Meany, 94-0251 (La. 7/5/94) 639 So.2d 229.
In determining whether to impose a duty in a particular situation, the court may consider various moral, social, and economic factors, including whether the imposition of a duty would result in an unmanageable flow of litigation; the ease of association between the plaintiff's harm and the defendant's conduct; the economic impact on similarly situated parties; the nature of the defendant's activity; moral considerations, particularly victim fault; and precedent as well as the direction in which society and its institutions are evolving. Meany v. Meany, supra; Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La.1988).
The purpose of the housing authority is to provide safe, decent and sanitary housing and a suitable living environment for families that cannot afford similar housing in the private sector. Rent for housing authority apartments is based upon income. In this instance, Mrs. Dupreast paid one hundred and three dollars a month rent.
Plaintiffs contend that because Mrs. Dupreast was elderly and infirm and the housing authority was aware that she had fallen and was unable to get up without assistance on one, possibly two, previous occasions, the housing authority had a duty to monitor Mrs. Dupreast in order to avoid the risk that she might not be able to notify anyone once she had fallen. Plaintiffs also contend that the close proximity of Mrs. Dupreast's apartment door to the office somehow creates a duty in this instance because of the ease of which an employee could regularly check on her. Of course, a daily phone call from her children could also have easily been made.
Generally, the mere fact that a plaintiff is elderly does not mean that the person is entitled to greater care and assistance, just as the age of a plaintiff does not in and of itself affect the standard of care applied in determining contributory negligence. Walden v. Pat Goins Benton Road Beauty School, Inc., 501 So.2d 1014 (La.App. 2d Cir.1987). What constitutes reasonable care varies in each case and is dependant on the facts in each individual case.
In the instant case, some employees of the defendant knew that Mrs. Dupreast had fallen on one, possibly two, occasions previously. On those occasions Mrs. Dupreast was able to phone for help. It is not the risk that Mrs. Dupreast might fall that plaintiffs allege the defendants had a duty to protect against, however. Rather, it is the risk that she would be unable to obtain assistance once she had fallen, as she had on the previous occasion, that plaintiffs allege the defendants had a duty to protect against.
*1295 Although we sympathize with the victims of this incident, we believe far greater harm would result from establishing a precedent finding a duty of the scope envisioned by the plaintiffs. We decline to impose a greater duty on public housing authorities regarding their obligation to tenants than the obligations of landlords in the private sector, except as provided for in the HUD guidelines. The ease with which Mrs. Dupreast could have been monitored is no more a factor in favor of the plaintiffs as it is the defendants. Monitoring devices are relatively inexpensive and the plaintiffs, including Mrs. Dupreast, had apparently decided against their use. We do not believe it is within the scope of the housing authority's duty to provide safe, decent, low-rent public housing to also provide monitoring of elderly or infirm tenants. Nor does the assistance provided by employees to Mrs. Dupreast on one or two occasions after she contacted them for help create such a duty. The duty of the housing authority is to provide housing. This duty does not encompass the care one would expect or be entitled to from a nursing home or similar facility where individual care is provided.
For these reasons, we vacate and set aside the judgments of the trial court and render judgment in favor of the defendants dismissing the claims of the plaintiffs with prejudice.
IT IS ORDERED, ADJUDGED AND DECREED that judgment is hereby rendered in favor of the defendants, The Housing Authority of Caldwell Parish and Audubon Indemnity Insurance Company, and against the plaintiffs, Louella D. Mayo, Ruth D. Dickerson and Samuel M. Dupreast, dismissing the demands of the plaintiffs with prejudice. Costs are assessed to plaintiffs.
VACATED AND RENDERED.