JACHARLES R. JONES, Judge.
Appellants, Jayashree Rao, M.D., and the State of Louisiana, LSU Board of Supervisors, appeal the judgment of the district court finding them liable for medical negligence in the death of Joseph Carey, the minor child of the Appellees, Raymond and Ruth Carey. Following a review of the record, we affirm the judgment of the district court.

Facts and Procedural History

Joseph Carey, born on May 13, 1988, was diagnosed with childhood diabetes at ten months. Joseph’s mother, Ruth Carey, received special training for treating Joseph’s diabetes and was told to bring Joseph to the ER at Children’s Hospital whenever he became ill.
On November 28, 1993, Joseph presented to Children’s Hospital at 12:17 p.m. with a one-day history of abdominal pain with vomiting and lethargy. In the emergency room, Joseph was diagnosed with having mild Diabetic Ketoacidosis (hereinafter “DBA.”) and dehydration. DKA is a serious condition which often ^requires the infusion of IV fluids to treat dehydration in patients with childhood diabetes.
In the emergency room, Joseph was treated with a bolus IV dose of normal saline solution. The emergency room physician, Dr. Druby Hebert, called the on-call pediatric endocrinologist, Dr. Jayashree Rao, at 1:45 p.m. on November 28, 1993, and she agreed to admit and treat Joseph. Dr. Rao ordered Joseph to be administered an IV solution of five percent dextrose and quarter normal saline (hereinafter “D5 quarter normal”) to be infused at the rate of 135 ccs an hour. At 3:30 p.m., after having received the D5 quarter normal solution for about two hours, Joseph developed frontal headaches, and was scheduled to be admitted to the hospital pediatric intensive care unit. At 7:00 p.m., a spinal tap was performed to determine whether Joseph had meningitis, which produced negative results.
At approximately midnight, Joseph was taken off of D5 quarter normal and put on D5 half normal saline. At 12:10 a.m. on November 29, 1993, Joseph was reported to have a neurological deficit after a nurse observed that one of Joseph’s eyes was dilated. At about 1:30 a.m., Joseph had a respiratory arrest. A CT scan taken at 2:30 a.m., revealed that Joseph had Cerebral Edema (hereinafter “CE”). Joseph began to receive Mannitol and Decadron for treatment of the CE at approximately 3:00 a.m. Also an MRI and EEG were scheduled. At 3:45 a.m., Dr. Rao arrived at the hospital and examined Joseph for the first time. Joseph died of CE on December 1,1993.
| a A medical review panel was convened to determine whether Dr. Rao breached the standard of medical care in treating Joseph. The medical review panel found that the State of Louisiana, LSU Board of Supervisors and Dr. Rao failed to comply with the appropriate standard of care as charged in the complaint and the conduct complained of was a factor in the resultant damages.
Subsequently, Raymond and Ruth Carey filed a wrongful death and survival action suit against Dr. Rao. After all evidence had been presented at trial, the jury found that Dr. Rao violated the applicable standard of care and awarded damages of $1,450,000, which the district court reduced to a judgment in favor of Mr. and Mrs. Carey in the amount of $500,000. It is from this judgment the State of Louisiana, LSU Board of Supervisors and Dr. Rao appeal.

Discussion

Before we commence a discussion of the issues, we are compelled to observe that it took us great pains to resolve the issues in *57 this appeal, as the Appellants’ brief was convoluted and redundant. The Appellants’ brief was not easy to follow as the arguments in support of each assignment of error were found throughout the brief and not in any succinct and organized manner.
The first assignment of error raised by the State and Dr. Rao is that the district court erred in failing to grant their Motion to Strike the testimony of Dr. Richard Sandler. The State and Dr. Rao argue that the Careys did not identify Dr. Sandler as an expert witness who would-be called to testify until August 7, 2000, after the court imposed a deadline for identification of witnesses. The Appellants argue that Dr. Sandler’s testimony should have been stricken from the record at trial when the Careys had subverted the discovery process in failing to identify Dr. 1 ¿Sandler as a witness for over six years, despite discovery requests for the identification of expert witnesses from the Careys. The Appellants argue that the district court abused its discretion by allowing them to be ambushed when the Careys intentionally subverted the lawful process of pretrial discovery.
The Careys argue that they contacted Dr. Sandler years earlier in the case, lost contact with him when he moved from New Orleans, and identified Dr. Sandler as an expert witness on August 7, 2000, once the Careys were able to relocate him. The Careys contend that they made Dr. San-dler available for deposition, but the Appellants sought a Motion to Strike for lack of opportunity to depose Dr. Sandler. The district court required Dr. Sandler be deposed on a date convenient for the Appellants; however, the Appellants selected October 13th as the deposition date, but cancelled due to administrative problems in their office. The Appellants then filed another Motion to Strike Dr. Sandler’s testimony; however, the district court ordered the Careys to select a date convenient to the parties. The date selected was November 4th in Springdale, Arkansas. The Appellants failed to appear, and the district court awarded cost and expenses to the Appellees for traveling to Arkansas for the deposition.
Any bias a trial court has regarding accepting or refusing testimony should be in favor of accepting the testimony. Palomo v. LeBlanc Hyundai Partnership, 95-278 (La.App. 5 Cir. 10/31/95), 665 So.2d 414. However, in the matter sub judice, the Appellants were granted more than a fair opportunity to take Dr. Sandler’s deposition. The district court did not abuse its much discretion by allowing Dr. San-dler to testify.
The second assignment of error raised by the State and Dr. Rao is that the district court erred in qualifying Dr. San-dler as an expert in pediatric | .¡endocrinology. They argue that Dr. San-dler is not a board certified ■ endocrinologist, and that he only treated a few patients under five years old. They further argue that Dr. Sandler lacked expertise in pediatric endocrinology, which rendered him unqhalified to testify as an expert. The Appellants also contend that adult endocrinology is a different specialty in medicine, and that DKA is rarely addressed in adult endocrinology patients. Therefore, the State and Dr. Rao contend that only a certified pediatric endocrinologist should have been qualified as an expert, or in the alternative, the testimony of a certified pediatric endocrinologist be given greater weight than that of Dr. Sandler.
The Careys argue that Dr. Sandler was board certified in endocrinology in 1972, at which time there was no sub-specialty in pediatric endocrinology. He practices both adult and pediatric endocrinology and *58 has done so since he entered private practice. The Careys argue that Dr. Sandler has treated many children for DKA and other pediatric illnesses. The Careys also contend that the district court was not manifestly erroneous in qualifying Dr. Sandler as an expert witness. We agree.
The trial judge has wide discretion in deciding which expert testimony to admit and his judgment will not be disturbed unless it is clearly erroneous. Mistich v. Volkswagen of Germany, Inc., 95-0939 (La.1/29/96), 666 So.2d 1073. The decision to accept a witness as an expert qualified to render an opinion on a particular matter may not be reversed in the absence of manifest error. Comeaux v. C.F. Bean Corp., 99-0924 (La.App. 4 Cir. 12/15/99), 750 So.2d 291, 297. Dr. Sandler was trained and certified in endocrinology, and not specifically adult or pediatric endocrinology. Neither specialty existed as a separate entity when Dr. Sandler was trained. Additionally, Dr. Sandler has thirty years of experience in | ^endocrinology. Therefore, the district court did not err in qualifying Dr. Sandler as an expert witness.
The third assignment of error raised by the State and Dr. Rao is that the district court failed to grant ao mistrial based on the testimony of Dr. Sandler. They argue that the district court abused its discretion by failing to exclude the testimony of Dr. Sandler from evidence. They argue that they were prejudiced by the admission of said evidence because Dr. Sandler was retained in 1994, yet not identified by the Careys until August 7, 2000. They acknowledge that the Code of Civil Procedure does not expressly provide for mistrial in this instance, but aver that the district court has broad discretion and is vested with the power to grant a mistrial when no other remedy would afford relief or where circumstances indicate that justice may not be done if trial continues.
The Careys argue that the State and Dr. Rao refused to depose Dr. Sandler, and therefore, the district court was justified in denying their Motion to Strike the testimony of Dr. Sandler. We agree.
As discussed above, the trial judge has wide discretion in deciding which expert testimony to admit and his judgment will not be disturbed unless it is clearly erroneous. Mistich v. Volkswagen, supra. The record reflects that the Appellants had ample opportunity to depose Dr. Sandler, but refused to do so. Therefore, the district court did not abuse its discretion in admitting the testimony of Dr. Sandler.
The fourth and fifth assignments of error raised by the State and Dr. Rao are that the district court erred in failing to grant their Motion for Directed Verdict; that the Careys did not prove the standard of care applicable to a pediatric endocrinologist in managing a pediatric patient experiencing DKA; and that they did not prove causation leading to an erroneous finding by the jury. They aver that|7their Motion for Directed Verdict should have been granted on the grounds that the Careys did not produce sufficient evidence of the standard of care and the breach thereof, or that the actions of Dr. Rao were the proximate cause of Joseph’s injuries. The Appellants further aver that Dr. Sandler did not define the standard of care applicable to Dr. Rao in treating a patient in DKA for the prevention of CE. They also argue that Dr. Sandler testified that he was not aware of any study that advocates the use of quarter normal saline for the treatment of DKA, and he makes a blanket statement that infusion of five percent dextrose is contraindicated. Further, the Appellants argue that Dr. Sandler cites no specific study disallowing the administration of D5 and one-quarter normal saline for the treatment of DKA, and cites no authority contraindicating its use or stating that its *59 use leads to the development of CE. Additionally, the Appellants contend that Dr. Sandler did not establish a standard of care as to the time Dr. Rao’s presence was required at the hospital for treatment of Joseph, and what should have been done by way of treatment. Also, the State and Dr. Rao argue that Dr. Sandler did not establish a standard of care with regard to the administration of Mannitol in the treatment of CE, and that none of the Appel-lees’ experts could agree as to when Man-nitol should have been administered.
Specifically, Dr. Martin Young, a pediatric endocrinologist and member of the medical review panel, testified that Joseph presented to the ER with CE and that the administration of Mannitol should have been considered upon presentation. Dr. Mark Leug, an expert in internal medicine and endocrinology, as well as a member of the medical review panel, testified that Dr. Rao should have addressed CE after the lumbar puncture. The Appellants contend that the Appellees’ experts only agreed that Dr. Rao was negligent, but could not agree on what the negligence |swas or when it occurred. Therefore, they contend that the Appellees’ experts failed to establish a standard of care, let alone a breach thereof.
In support of their argument that the Appellees failed to prove a breach of the standard of care, the Appellants cite the testimony of Dr. Young. They argue that Dr. Young testified that Joseph was exhibiting signs of CE when he presented to ER, and there would have been nothing Dr. Rao could have done that would have resulted in the child’s development of CE. They also argue that Dr. Young further speculated that if Joseph did not present to the ER with CE, that he developed it within five hours of presenting to the ER, and that Dr. Rao would not have had any indication that Joseph was showing signs of CE prior to that time. Further, the State and Dr. Rao aver that Dr. Leug testified that the causes of CE are unknown, and therefore could not establish that Dr. Rao failed to detect or treat the CE.
The Careys respond by arguing that they proved the applicable standard of care was violated when Dr. Rao ordered that Joseph be given an IV solution of D5 quarter normal saline, and the administration of that solution, more likely than not, caused Joseph’s CE. Also, they argue that their experts all testified that the applicable standard of care was violated when Dr. Rao failed to timely treat Joseph for CE. All of the Appellees’ experts agreed that as soon as there was clear clinical evidence of CE, Joseph should have been treated with Mannitol, the drug used to treat CE, and that there was clear evidence of CE by 12:10 a.m. on November 29th. However, Dr. Rao did not commence treatment until more than three hours later. The experts further testified, according to the Appellees, that the sooner the treatment for CE begins, the higher the patient’s chances are for surviving the CE. | flTherefore, they argue that had Joseph’s treatment started at 12:10 a.m., he would have had a fifty percent or greater chance of survival.
Additionally, the Careys argue that they established the applicable standard of care and offered extensive evidence to support a breach thereof. The Careys contend that once they proved that Dr. Rao and the State violated the applicable standard of care by ordering the D5 quarter normal saline IV solution and by not timely starting treatment of Joseph’s CE, the question became whether those violations of the standard of care increased the risk of Joseph dying of CE to the extent of being a substantial factor in causing his death. A substantial factor need not be the only *60 causable factor; it need only increase the risk of injury. The Careys aver that they did not have to prove that Joseph would have survived if he were not given the D5 quarter normal IV solution or if treatment for CE was started before 12:10 a.m., on November 29th, but only that he would have had a better chance of survival. Therefore, they argue, not only did the Appellees prove a standard of care but a breach thereof, and consequently, the district court was not in error for denying the Motion for Directed Verdict nor was the jury clearly erroneous in its findings. We agree.
The standard of care required of state physicians under La. R.S. 40:1299.39(B)(1) is the same as that required to be proven under the provisions of La. R.S. 9:2794. La. R.S. 9:2794(A) states that:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., ... the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant hnpractices in a particular specialty, and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3)That as a proximate result of this lack of knowledge or skill or failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Piro v. Chandler, 33,953 (La.App. 2 Cir. 11/1/00), 780 So.2d 394, provides additional foundation for the evaluation of a medical claim. Piro states that:
[T]he plaintiff must prove the standard of care, the violation or breach of the standard of care, and the causal connection between the alleged negligence and injuries. Turner v. Stassi 33,022 (La.App.2d Cir.5/10/00), 759 So.2d 299.... The determination of whether ... the duty of care owed a patient [was breached] depends on the facts and circumstances of each particular case and is a question of fact for the jury. Moore [v. Willis-Knighton Medical Center, 31,203 (La.App.2d Cir.10/28/98), 720 So.2d 425], supra; Borne v. St. Francis Medical Center, 26,940 (La.App.2d Cir.5/10/95), 655 So.2d 597, writ denied, 95-1403 (La.9/15/95), 660 So.2d 453. Similarly, the applicable standard of care is determined from the particular facts of a case, including evaluation of expert testimony. Corley v. State, through Department of Health and Hospitals, 32, 613 (La.App.2d Cir.12/30/99), 749 So.2d 926; Hebert v. LaRocca, 97-433 (La.App. 3d Cir. 12/10/97), 704 So.2d 331.
In a medical malpractice action, great deference is due the jury’s findings when medical experts express differing views, judgments, and opinions as to whether the standard of care was met. Hunter [v. Bossier Medical Center, 31,-026 (La.App.2d Cir.9/25/98), 718 So.2d *61 636], supra. The jury’s findings of fact should be upheld unless shown to be clearly wrong or manifestly erroneous. Moore, supra; Martinez v. Schumpert Medical Center, 27,000 (La.App.2d Cir.5/10/95), 655 So.2d 649. Reversal of the fact finder’s determinations | urequires the appellate court to conclude that no reasonable factual basis exists for the fact finder’s findings and to determine that the record establishes that such findings are clearly wrong or manifestly erroneous. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880 (La.1993).
Piro v. Chandler, 33,953, pp. 3-4 (La.App. 2 Cir. 11/1/00), 780 So.2d 394, 396-397.
The expert witnesses agreed that the use of D5 quarter normal IV solution was inappropriate, a violation of the standard of care, and a contributing factor to the CE that Joseph developed. All of the experts, except Dr. John Willis, the Appellants’ expert, a neurologist, agreed that Joseph’s CE was not timely treated, and selected a time prior to the time in which Dr. Rao chose to administer Mannitol as the appropriate time to administer the drug. Clearly, the Careys established a breach of the standard of care owed to Joseph. Thus, the district court did not err in denying the Motion for Directed Verdict nor was the jury clearly erroneous in their findings.
The sixth assignment of error raised by the State and Dr. Rao is that the district court erred in failing to grant their exceptions of no cause of action and no right of action. They argue that the Malpractice Liability for State Services Act, La. R.S. 40:1299.39, et seq, does not permit individual state health care providers to be named as defendants. They aver that the Act provides that only the State may have liability for medical malpractice, and an individual state health care provider does not possess this liability. Hence, the Ap-pellees improperly named an individual health care provider as a defendant in this lawsuit, and the plaintiffs were improperly found to have a cause of action or right of action against the Appellants. The Appellants cite four cases from the Civil District Court for the 112Parish of Orleans and one case from the Twenty-fourth Judicial District Court for the Parish of Jefferson, specifically noting that Exceptions of No Cause of Action and No Right of Action were upheld in Germaine Chouest, et al. v. Children’s Hospital et al., CDC No. 96-22063, Div. “E,” 9; Francis Perry, et al. v. State of Louisiana, et al., CDC No. 98-17727, Div. “N,” 14; Robert A. Kantas, et al. v. Board of Supervisors of Louisiana State University, et al, CDC No. 98-2168, Div. “K,” 14, and Charles W. Cooper, et al. v. Joseph Macaluso, Jr., M.D., et al., 24th JDC No. 510-297, Div. “D.”
The Careys argue that the statute provides that a state employed doctor may be a named defendant in a medical malpractice suit against the State and the involved state health care providers. The statute states that the State is liable in addition to the state health care provider. Pursuant to La. R.S. 40:1299.39.1(A)(1), it is mandatory for a medical review panel to review the allegations of medical malpractice against defendant state health care providers. The Careys argue that since the panelist selected to serve on the medical review panel shall be selected from physicians and nurses who are from the same class, specialty of practice, and have the same minimum qualifications as are any of the defendants other than a hospital implies that physicians and nurses whose acts are at issue must be named defendants. See La. R.S. 40:1299.39.1(C)(3)(f)(v). Otherwise, a proper medical review panel could not be *62 formulated. In any case, they argue, the statute makes it clear that state employed physicians and nurses are expected to be made defendants in actions like the matter sub judice. Therefore, they argue, the district court did not err by denying the State’s exceptions of no cause of action and no right of action. We agree.
1^Clearly, the health care provider, as well as the State are liable for medical malpractice occurring at state health care facilities as evidenced by La. R.S. 40:1299.39(A)(l)(a). This provision defines “state health care provider” or “person covered by this part” as:
(i)The state or any of its departments, offices, agencies, boards, commissions, institutions, universities, facilities, hospitals, clinics, laboratories, health care units, ambulances, ambulance services, university health centers, and other state entities which may provide any kind of health care whatsoever, and the officers, officials, and employees thereof when acting within the course and scope of their duties in providing health care in connection with such state entity; or (ii) A person acting in a professional capacity in providing health care services, by or on behalf of the state, including but not limited to a physician ... who is a licensed physician when acting solely in accordance with the Mental Health Law as provided in R.S. 28:50 et seq....
The language of the statute includes the physicians as covered under the statute. Therefore, nothing in the language of this statute indicates that the physician is not liable along with the State for the medical malpractice alleged.
The seventh assignment of error raised by the State and Dr. Rao is that the district court erred in failing to recuse the district judge. They argue that the district judge displayed bias against the Appellants throughout the pretrial and trial proceedings. Specifically, they argue that the district judge allowed the Careys to list a new witness, Dr. Sandler, after the deadline for the Careys to identify witnesses; to use his testimony at trial; to refuse to set a reasonable expert fee; and to sanction them with respect to taking the deposition of Dr. Sandler. The Appellants further argue that the district judge was not impartial by extending the deadline for the Careys to depose an Appellants’ witness, Dr. Rao; and that at the trial, the district judge demonstrated bias by refusing to allow the testimony of a 114key defense witness, Dr. Druby Hebert, when he was present in court and would be leaving the following day for extended overseas travel. Dr. Hebert was the emergency physician at Children’s Hospital who initially saw the patient. The district court further exhibited bias by failing to grant two motions for mistrial when substantial prejudice to the Appellants had occurred, which prevented a fair trial. The Appellants based their motions for mistrial on the claims that the district court failed to grant the Appellants’ Motion for Directed Verdict despite the fact that the Appellees did not prove a prima facie case; and that the district court failed to strike the testimony of Dr. Sandler, although he was listed as a witness on August 7, 2000, after having been retained in 1994.
The Careys argue that much of the Appellants’ recusal argument centers around the district judge’s decision to allow the testimony of Dr. Sandler, and the sanctions imposed on the Appellants for not attending the deposition of Dr. Sandler. The Careys argue that the district judge went to great lengths to allow the Appellants an opportunity to depose Dr. San-dler. The parties agreed to depose Dr. Sandler on October 13, 2000, a date selected by the Appellants; however, the Appel *63 lants cancelled the deposition to handle interoffice matters. The Appellants rescheduled the deposition with Dr. Sandler without consideration for the availability of Appellee’s attorney. The Appellants moved to quash the newly scheduled deposition date and for expenses incurred for having to reschedule the airline reservation; however, the district judge granted the Appellants an additional opportunity to depose Dr. Sandler on a date agreeable to all of the parties. Thus, the Careys argue, the district judge was not expressing bias or prejudice, but was attempting to be fair to the Appellants by granting them multiple opportunities to depose Dr. Sandler.
11KLa. C.C.P. art. 151(B)(5) states that:
A judge of any court, trial or appellate, may be recused when he: ... (5) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties’ attorneys to such an extent that he would be unable to conduct fair and impartial proceedings.
The Appellants have not demonstrated that Judge Belsome, the district judge who heard the recusal motion, was in error in denying their Motion to Recuse Judge Boyle, the trial judge. Clearly, the trial judge extended herself in trying to accommodate the Appellants in taking the deposition of Dr. Sandler. The issues raised by the Appellants are merely issues available for review on appeal, and do not suggest impartiality on the part of the trial judge. The trial judge’s decision to rule against a party and the manner in which the case was managed do not in and of itself indicate bias or impartiality, and thus does not constitute grounds for recusal. We find no merit to this argument.
The eighth assignment of error raised by the State and Dr. Rao is that the award by the jury was manifestly erroneous and should be reversed, or in the alternative, reduced. They argue that the evidence was insufficient to prove that Joseph’s chances for survival were reduced by the Appellants’ actions or inactions. They argue that Joseph’s quality of life, had he survived, would have been poor, assuming that he could have been revived, and they argue that they are unaware of any case quantifying life beyond brain death and prior to heart stopping death. They further argue that the damage award in the instant matter is clearly excessive, particularly in light of the testimony in the record to the effect that Joseph’s quality of life, had he survived, would have been poor.
| ifiThe Careys argue that considering the medical records detailing Joseph’s suffering and the testimony of Ruth Carey, it cannot be said that the jury exceeded the vast authority it had in setting damages, citing Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). They further argue that when, as here, the damages at issue are insusceptible of precise measurement, much discretion is left to the court for reasonable assessment of damages. La.C.C. art.1999, Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). We agree.
The jury awarded the Appellees a total of $1,450,000. The district court appropriately reduced the jury’s award to $500,000, plus interests and costs, as required by La. R.S. 40:1299.39(F). This statute states in pertinent part:
Nothwithstanding any other provision of the law to the contrary, no judgment shall be rendered and no settlement or compromise shall be entered into for the injury or death of any patient in any action or claim for an alleged act of malpractice in excess of five hundred thousand dollars plus interest and costs, *64 exclusion of future medical care and related benefits valued in excess of such five hundred thousand dollars....
The district court acted within in its discretion in reducing the jury award to $500,000. The amount awarded was not erroneous nor was it excessive.
The ninth assignment of error raised by the State and Dr. Rao is that the district court erred in failing to allow the Appellants to call Dr. Druby Hebert out of turn, considering that he was leaving the country and would not be returning until after the end of trial. They argue that the district court indicated that the Appellees would be allowed to call Dr. Hebert. The Appellees also requested a writ of attachment be issued to keep Dr. Hebert in New Orleans, to which the Appellants did not object; however, the district court denied the request, and |17advised counsel for the parties to take the deposition of Dr. Hebert that evening following the conclusion of the day’s proceedings. The Appellees elected not to call Dr. Hebert; consequently, the Appellants requested an opportunity to call Dr. Hebert out of turn, as he was listed as a fact and expert witness. The Appellees objected to this request, which the district court denied. However, the district court totally disregarded the potential for prejudice to the Appellants, and deprived Dr. Rao of an indispensable witness.
The Appellants argue that Dr. Hebert was expected to contradict Dr. Sandler’s criticism of Dr. Rao and state that Dr. Rao’s absence from the hospital during the first sixteen hours of Joseph’s admission was both reasonable and within the standard of care. They argue that Dr. Hebert was expected to testify that he had previously treated the decedent, and to expound in his testimony regarding his communication with Dr. Rao throughout the first sixteen hours of Joseph’s admission with respect to Joseph’s physical and neurological condition. He was to testify that it was both reasonable and predictable for Dr. Rao to rely on him to care for the patient, considering his own skill, training, education, and specific and extensive experience in treating this patient. Consequently, Dr. Rao was not allowed to present to the jury, through Dr. Hebert’s testimony, evidence that she was in fact able to give orders to control the patient without her presence at the hospital. Further, the Appellants argue that Dr. Hebert was previously made a defendant in this litigation, .but was voluntarily dismissed after he sued a private panel to which Dr. Rao was not a party, because she qualified as a state health care provider. Considering that evidence that is otherwise admissible should be allowed when it would not be unduly prejudicial to admit the evidence, the h ¡Appellants argue that there was no justifiable reason for the district court to refuse to exercise its vast discretion in changing the order of trial.
The Careys argue that the trial order in this case provided that “no expert may be listed as a witness unless he has previously been interviewed and retained.” They also maintain that the order provided that “[a]ny properly subpoenaed witness who cannot appear at trial is to be deposed and the transcript of that deposition shall be filed of record prior to the date of trial.” They argue that in jury trials the court’s order further required that “[e]ach expert witness ... shall be deposed so that the deposition may be used in the event that the witness is unable to appear or in accordance with LSA CCP Art. 1450.” During trial, the Appellees asked the district court to issue a writ of attachment compelling Dr. Hebert to testify in person. The district court denied the writ of attachment stating that the deposition of Dr. Hebert could be taken that day and offered into *65 evidence. At that time, the Appellees argue, the Appellants said nothing about wanting to call Dr. Hebert as a witness in their case in chief. Instead of deposing Dr. Hebert in accordance with the district court’s ruling, Appellants asked for leave to call Dr. Hebert out of turn during Ap-pellee’s case in chief, which would have resulted in logistical problems involving other out of town witnesses, would have been a financial hardship for Appellees, and would have broken the continuity of the Appellees’ presentation of evidence. The Appellees opposed the motion and the district court denied said motion.
Considering that Dr. Hebert should have been interviewed about his availability to testify at a trial that was anticipated to take several days, and that under the prior order of the district court, he should have been deposed prior to trial, and that the district court granted both the Appel-lees and Appellants a chance |19to depose Dr. Hebert during the trial, it cannot be said that the district court abused its wide discretion in determining the order of trial by denying the Appellants’ motion to call Dr. Hebert out of turn. Nor can it be said that the denial of the motion was an indication of the district judge’s bias against the Appellants. The district court refused the request to attach Dr. Hebert, but gave both parties an opportunity to depose him after trial hours and read his testimony into the record. The Careys argue that such a ruling favors neither side, and therefore, it should not be reversed on appeal. We agree.
La. C.C.P. art. 1632 provides the normal order of trial, but also indicates that “[t]his order may be varied by the court when circumstances so justify.” The trial judge has discretion in conducting trial, which includes the order of presentation of witnesses as well as the admissibility of witness’ testimony. La. C.C.P. arts. 1551, 1631, 1632; Combs v. Hartford Ins. Co., 544 So.2d 583 (La.App. 1 Cir.1989) writ denied, 550 So.2d 630 (La.1989). Whether witnesses, expert or otherwise, are permitted to testify is within the trial judge’s discretion, and when this discretion is abused, such a decision may be reversed on appeal. Dufrene v. Willingham, 97-1239 (La.App. 5 Cir. 10/28/98), 721 So.2d 1026, writ denied, 99-0032 (La.3/12/99), 739 So.2d 212.
A review of the record reflects the following exchange at trial:
MR. THOMAS:
Dr. Hebert said he is going to Africa in the morning. He is under subpoena.
THE COURT:
Who’s [sic] witness is Dr. Hebert?
MR. THOMAS:
| P,0He is my witness and he is under subpoena. You can attach him. It’s up to you.
THE COURT:
I am not attaching this man.
MR. THOMAS:
He’s under subpoena.
THE COURT:
I am not attaching this man.
MR. THOMAS:
I can’t stop him from going to Africa. All I’m telling you is he is under subpoena. And I am not taking Dr. Sandler off the stand to put him on.
THE COURT:
The only thing I can recommend you do, I am not attaching this doctor who is going to Africa. Judge Love’s trial order states that for experts you need to depose them.
MR. THOMAS:
He is not an expert. He is a fact witness.
THE COURT:
*66 He is the — he is a doctor. He is the treating physician?
MR. THOMAS:
Right. He treated him in this case and treated him only in the emergency room. And we are not concerned with whether what he did was right or wrong that he did in the emergency room.
THE COURT:
I am not attaching him. I suggest—
* * *
| ■>,1 THE COURT:
I’m denying the motion to attach. What I would suggest is that you depose him tonight on the record, you examine him and he can cross him.
MR. WEISS:
I object to that. I object to that. We got Dr. Sandler up here. We are cross examining him blind because we didn’t have an opportunity to take the deposition.
* * *
THE COURT:
I was suggesting that you depose him. I’m not ordering that he be deposed.
This exchange indicates that the district court reasonably handled Dr. Hebert as an expert witness. He may have been privy to some of the particular facts of the case, and the attorneys wanted to rely on his expert testimony as a physician. However, it is common practice to use testimony from the deposition of a witness or an expert witness in lieu of live testimony when the witness is unavailable for trial. Both parties had ample opportunity to depose Dr. Hebert prior to trial and even the day in question prior to his departure out of the country. Thus, we do not find that the district court abused its discretion in preventing Dr. Hebert from being called out of turn, nor does the record indicate that the actions of the district court were rendered out of bias.
The final assignment of error raised by the State and Dr. Rao in their supplemental brief is that the amount of the judgment should be supplemented to reflect the amount of the judgment rendered for costs on March 14, 2001, in which the amount of costs was set at $12,892.84. The Appellants contend that costs were assessed to them in the Judgment signed December 14, 2000.
ImThe Careys aver that the Appellants filed an untimely appeal of the judgment taxing costs in this matter, and therefore, this later appeal and issue should be dismissed. To the extent this Court decides to address the judgment taxing costs, the Appellees contend that all of the costs taxed are reasonable and supported by evidence submitted with the motion to tax costs. Therefore, the expenses taxed as costs should not be changed on appeal.
Rule 2-12.6 of the Uniform Rules for the Courts of Appeal states that “[t]he appellant may file a reply brief, if he has timely filed an original brief, but it shall be strictly confined to rebuttal of points urged in the appellee’s brief. No further briefs may be filed except by leave of court.” The issue of costs was raised in a Motion to Supplement and Correct the Record with Incorporated Memorandum in Support, which was filed after the Appellants’ original brief was filed. Therefore, any argument would have to be construed essentially as a reply brief, although, that is not the nomenclature used by the Appellants. Thus, we pretermit a discussion of this issue, as it should have been raised in the original brief filed by the Appellants.

Decree

For the reasons stated herein, we hereby affirm the judgment of the district *67 court in favor of the Careys and against the State of Louisiana and Dr. Rao. All costs are assessed to the Appellants.

AFFIRMED.

BYRNES, C.J., concurs in result.
MURRAY, J., concurs.