DENNIS R. BAGNERIS SR., Judge.
The Housing Authority of New Orleans (“HANO”) appeals a judgment in which it was held liable for damages sustained by Darione Benjamin, the minor child of Ta-meko Benjamin, in an alleged accident on property managed by HANO in the Lafitte Housing Development. For the following reasons, we affirm the judgment of the trial court.
FACTS
Tameko and Darione Benjamin lived in an apartment managed by HANO at 633 North Galvez Street, within the Lafitte Housing Authority. On March 30, 1996, Darione Benjamin (“Darione”), who was 2 years old at the time of the accident, fell out of a second floor window and landed on the first floor balcony. Thereafter, Dar-ione was transported to the Medical Center of Louisiana where she was treated for a depressed skull fracture, a hematoma of the upper lid, a laceration to the center of the forehead, a left nondisplaced frontal fracture, and a broken left arm and wrist.
TRIAL PROCEEDINGS
At trial, plaintiffs offered the testimony of Tameko Benjamin, Monica Charles, and Dr. Mary Christine Webster. In support of its case, HANO offered the testimony of Jeffrey Wilson, Rudolph Dupart, and Dr. Thattil Gouri.

Plaintiffs’ Witnesses

Tameko Benjamin, the mother of Dar-ione, testified at trial that HANO put the new screen into her apartment window two to three days before the accident. Ms. Tameko testified that, on the day of the accident, she opened the windows in her apartment because the air conditioners were not working. She testified that around mid-day, she and her two girls (ages 5 and 2) went down for a nap. Ms. Tameko testified that her older daughter woke her up by yelling that Darione had fallen out of the upstairs window. Ms. Tameko testified that she “got up, went to the window, the screen was just hanging there. I [Tameko] looked down and my baby was just lying still on the porch.” Ms. Tameko testified that the window screen was hanging to one side. Thereafter, Ms. Tameko testified that an ambulance picked up Darione and brought her to the Medical Center of Louisiana, where she was treated for a fractured skull, and a hematoma of the upper lid. Ms. Tameko further testified that ten days after the accident, an x-ray revealed that Darione’s arm and wrist were broken.
Monica Charles, a neighbor of the plaintiffs, testified that she witnessed Darione falling out of the window. Specifically, Ms. Charles testified that she was looking over her top'porch when she saw Darione fall out of the window.
Dr. Mary Christine Webster, an expert in physical medicine, testified that she first saw Darione on January 8, 2001 for urinary incontinence. After reviewing the x-rays that were done at the Medical Center of Louisiana in March of 1996, Dr. Webster testified that she noticed “a very *1211 small amount of fluid next to one of the iliac arteries on the CT of the abdomen.” Dr. Webster testified that this finding indicated that Darione most likely suffered trauma in the pelvis and lower abdominal area at the time of her fall in 1996. Dr. Webster referred Darione to a pediatric urologist.

HANO’s Witnesses

Jeffrey Wilson, an employee of HANO, testified that sometime around November 1995 or early 1996, a blitz crew came to the Lafitte Housing Authority in order to put new screens on the residents’ windows. Specifically, Mr. Wilson testified as to the blitz crew and the age of the screens as follows:
Q. Tell me about what happened with that blitz crew doing them (sic) screens.
A. What we normally do is we take into account to what — once we get an order in, what the residents need, and then we find out that this is one of our top priorities that the residents needed screens. So once we got the shipment in, we didn’t have the manpower in to install them in a certain length of time, so we get other maintenance guys from other sites to come in and install them and take care of that general area for us.
Q. So when you are doing that, do you still use the same orders when they come in like that and you’re getting them out of the warehouse and on the units?
A. Not in most cases.
Q. So there wouldn’t be any paperwork for that?
A. No.
Q. Now, I want you to take a look at the photographs that’s been introduced as P-3B. Can you see the windows at the top in the middle of the photographs, can you see those two?
A. Uh-huh (affirmative response)
Q. In looking at this photograph, you see this window next to this window. Those aren’t the same age screens, are they?
A. No, they’re not.
Q. The one on the left, and this is the one that has been identified by Ms. Tameko Benjamin as the one that her daughter fell through, that looks like a much newer screen, right?
A. Right.
Q. The one on the right is an older screen?
A. Right
Rudolph Dupart, an Assistant Maintenance Manager for HANO, testified that according to the maintenance record, the blitz crew installed the screens in the Lafitte Housing Authority complex by November 20, 1995. He further testified that screens are for decoration and to keep insects out when the window is raised.
Dr. Thattil Gouri, an expert in pediatrics, testified that he treated Darione for excessive bed-wetting on March 5, 1998. Dr. Gouri testified that at that time, Dar-ione “had a suspected urinary tract infection.” Dr. Gouri testified that Darione had a urinalysis and culture done on July 9, 1998, which tested positive for a urinary tract infection. Thereafter, Dr. Gouri testified that he diagnosed Darione with recurring urinary infections. Because of the recurring urinary tract infections, Dr. Gouri performed an ultrasound on Dar-ione, which indicated that Darione’s bladder and urethra were normal. Dr. Gouri could not comment as to whether he thought Darione’s fall in 1996 was the reason for the frequency in urination or the *1212 frequent urinary tract infections because he did not treat Darione at the time of the 1996 accident.
Based on the evidence produced at trial, the trial court found HANO liable for Dar-ione’s injuries and awarded her $95,000.00 in damages, plus interest from the date of demand, and costs. On appeal, HANO argues that plaintiffs failed to meet their burden of proving its negligence. Further, HANO claims that the damages awarded to plaintiffs were excessive.
DISCUSSION
The main issue before this court is whether plaintiffs satisfied their burden of proving negligence on HANO’s part by a preponderance of the evidence. As stated by the Louisiana Supreme Court, negligence cases are generally resolved by use of the duty/risk analysis. Perkins v. Entergy Corp., 00-1372, 00-1387, 00-1440 (La.3/23/01), 782 So.2d 606. This duty/risk analysis requires an examination of five separate elements:
1. Whether the defendant had a duty to conform his conduct to a specific standard (the duty element);
2. Whether the defendant’s conduct failed to conform to the appropriate standard (the breach element);
3. Whether the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element);
4. Whether the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and
5. Whether plaintiff was damaged (the damages element).
Id. at 611.

Duty

Duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances. Godfrey v. Boston Old Colony Ins. Co., 1997-2568, p. 15 (La.App. 4 Cir. 5/27/98), 718 So.2d 441, 448. Whether a legal duty exists is dependent upon the relationship between the parties. Warren v. Campagna, 686 So.2d 969, 978 (La.App. 4 Cir. 12/27/96). A housing authority’s purpose is to provide safe, decent and sanitary housing and a suitable living environment for families that cannot afford similar housing in the private sector. Mayo v. Audubon Indem. Ins. Co., 666 So.2d 1290, 1294 (La.App. 2 Cir. 1/24/96). Thus, a housing authority owes a duty to exercise the necessary care to its tenants to protect them from dangers within its control. Id.
In the instant case, there was a legal relationship between the parties by virtue of the fact that plaintiffs are tenants of the Lafitte Housing Authority, which is managed by HANO. Thus, HANO owed plaintiffs a duty to exercise the necessary care and to protect them from dangers within its control.

Breach of Duty

After determining that a duty exists, the next issue to address is whether the HANO has violated the duty. Generally, a party who owes a duty breaches that duty when he fails to exercise reasonable care in protecting those at risk. Morrison v. Kappa Alpha Psi Fraternity, 31,805 (La.App. 2 Cir. 5/7/99), 738 So.2d 1105, 1116, citing Dobson v. Louisiana Power & Light Company, 567 So.2d 569 (La.1990). A determination of whether HANO has breached its duties depends upon the facts and circumstances of each particular case. Carey v. Rao, 2001-1235, p. 10 (La.App. 4 Cir. 9/11/02), 828 So.2d 53, 60, writ denied, 2002-2545 (La.12/13/02), 831 So.2d 986.
In this case, the question concerning breach is whether the trial court could conclude, given the facts and circumstances, that HANO failed to exercise the *1213 necessary care toward plaintiffs when it installed the window screen. The trial court found that HANO “failed in its duty to proper [sic] install the window screen that ultimately caused plaintiffs injuries.” While the trial court did “not suggest that window coverings; such as window screens are or should be design [sic] to withstand the weight of an adult who is of normal growth and develop [sic]”, it did find that “a properly attached and installed window screen should withstand tension associated with the slight use of force.” Based on our review of the record, we cannot say that the trial court was manifestly erroneous in its factual finding that HANO failed in its duty to properly install the window screen.

Cause-in-Fact and Legal Cause

Cause-in-fact and legal cause are generally questions for the trier of fact. Perkins v. Entergy Corp., 2000-1372, p. 9-10 (La.3/23/01), 782 So.2d 606, 612. As such, this court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Id. The Louisiana Supreme Court stated that “[c]ause-in-fact is a ‘but for’ inquiry, which tests whether the accident would or would not have happened but for the defendant’s substandard conduct.” Id. at 612.
The scope of protection (legal cause) inquiry is a question of policy whether the particular risk falls within the scope of the duty. A proper inquiry is the ease of association of the injury with the rule of conduct that is urged. Haydin v. Crescent Guardian, Inc. 2001-1986, p. 10 (La.App. 4 Cir. 5/12/02), 818 So.2d 1033, 1040. The extent of protection owed to a particular plaintiff is determined on a case-by-case basis in order to avoid making a defendant an insurer of all persons against all harms. See Haydin v. Crescent Guardian, Inc., 818 So.2d at 1041.
Tameko testified that a HANO employee had placed the screen in the window two to three days before the accident. Mr. Wilson testified that the “blitz crew” might have installed the screens in early 1996. Tameko further testified that when she came into her daughter’s room following the accident, the screen was hanging to one side. The trial court found “that the plaintiff was successful in proving that the improper installed window screen was a cause in fact of the injuries of which she complained.” Further, we find the trial court could reasonably conclude that HANO’s duty to properly install a window screen does encompass the risk that a child would lean against the window screen. After our review of the record, we find that a reasonable factual basis does exist in the record to support the trial court’s finding that the window screen was a cause in fact and legal cause of Darione’s injuries.

Damages

In it’s last assignment of error, HANO asserts that the damage awards are excessive. We find no merit to HANO’s argument.
It is well settled that the trial court has vast discretion in setting the amount of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). The evidence at trial indicated that Dar-ione was treated for a depressed skull fracture, a hematoma of the upper lid, a laceration to the center of the forehead, a left nondisplaced frontal fracture, and a broken left arm and wrist. We find no abuse of the trial court’s vast discretion in awarding plaintiffs $95,000.00 in damages.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
CANNIZZARO, J., DISSENTS WITH REASONS.