893 So.2d 1 (2004)
Tameko BENJAMIN, on Behalf of Her Minor Child, Darione BENJAMIN
v.
HOUSING AUTHORITY OF NEW ORLEANS.
No. 2004-C-1058.
Supreme Court of Louisiana.
December 1, 2004.
Rehearing Denied February 25, 2005.
*2 Ammon Leon Miller, Jr., New Orleans, for applicant.
Frank Marion Buck, Jr., New Orleans, for respondent.
VICTORY, J.
We granted this writ application to determine whether the trial court committed manifest error in finding that the Housing Authority of New Orleans ("HANO") negligently installed a window screen in plaintiff's apartment which caused her daughter to sustain injuries. After reviewing the facts and the applicable law, we reverse the judgments of the lower courts because their conclusion that HANO was negligent is clearly without evidentiary support and is therefore manifestly erroneous.

FACTS AND PROCEDURAL HISTORY
On March 30, 1996, two and one-half year old Darione Benjamin ("Darione") fell out of a second floor window of her apartment building in the Lafitte Housing Development and landed on the first floor balcony. She was transported by ambulance to Charity Hospital where she was treated for a depressed skull fracture, a hemotoma of the upper lid, a laceration to the center of the forehead, and a left nondisplaced frontal fracture, and a broken left arm and wrist.
Darione's mother, Tameko Benjamin ("plaintiff") filed suit against HANO alleging that HANO, as owner and operator of the premises, negligently caused her injuries by failing to properly maintain and repair the window screen in Darione's bedroom. At trial, plaintiff called the following witnesses: plaintiff, her neighbor Monica Charles and Dr. Mary Christine Webster.[1] Plaintiff testified that around *3 noon on the date of the accident, she put Darione and her five year old sister down for a nap in their bedroom and that she opened one of the two bedroom windows because the air conditioning unit in the other window was not working. She testified that she then went to her own bedroom to take a nap. She was awakened 30-45 minutes later by her older daughter screaming that Darione had fallen out of their bedroom window. When she entered the girls' bedroom, the screen was hanging from the top to one side, and she looked out the window and saw Darione lying on the first floor balcony below.
Regarding the window screens, plaintiff testified that there were never any screens on the window in question for the eight to nine years she lived in the apartment. Plaintiff testified that two-three days before the accident, a HANO employee named "Jeffrey" installed window screens in her apartment subsequent to her request. After the screens were installed, she testified that she signed paperwork indicating that they had been installed. However, on cross-examination, she admitted that she signed a HANO work order on November 25, 1995 for screen installation, which was actually five months before the accident. In any event, she testified that in the girls' bedroom, the bottom of the window was located about eleven inches from the ground. When she opened the window on the date of the accident, she looked at the screen and it appeared to be properly installed. She further testified that she had no knowledge whether or not the screen was locked at the bottom prior to the accident and that she did not notify HANO prior to the accident that the screen was improperly installed.
Plaintiff's neighbor, Monica Charles, testified that she was on her porch at the time of the accident and saw Darione fall out of the window.[2] However, she did not see what caused her to fall because "when [she] looked up she was already coming out of the window."
HANO called two of its maintenance employees, Jeffrey Wilson and Rudolph Dupart. Wilson testified that the screen was installed on November 25, 1995 by a "blitz crew" that was called in from other housing developments to do maintenance work in all the apartment units. He produced the entire maintenance file on plaintiff's unit and testified that there was no HANO work request or order in March of 1996 when plaintiff alleges the screen was installed. He further testified that he did not recall installing the screen in plaintiff's unit and that if he had, there would have been a work order with his name on it.
*4 Dupart, the supervisor of the maintenance workers, testified that the purpose of the screens is decorative and to keep insects out when the window is raised, not to keep children from falling out of the window. Dupart provided the only testimony on how the screens operated, testifying that they had two slats on the top of the window casing on the outside and the screens would go in the slats. He testified that the screens were held in place as follows: "When you put a screen in, you had two hooks and those hooks had two `lil' pins. They weren't nails ... they was `lil' pins and they would come over those pins and hold the screen in place." He testified that there was a "ticket" signed by a member of the blitz crew indicating that the screen was installed in November of 1995. He also testified that the average window in the Lafitte Housing Development was 36 inches off the floor. Finally, he testified that he never inspected this particular window screen. The day after the accident, a new screen was installed.[3]
After hearing the evidence, the trial court awarded damages to the plaintiff for the following reasons:
Considering the testimony produced at trial, this Honorable Courts [sic] finds that Housing Authority of New Orleans failed in its duty to proper [sic] install the window screen that ultimately caused plaintiff's injuries. While this Court does not suggest that window coverings; such as window screens are or should be design [sic] to withstand the weight of a adult who is of normal growth and develop [sic], this court finds that a properly attached and installed window screen should withstand tension associated with the slight use of force.
This Honorable Court further finds that the plaintiff was successful in proving that the improper [sic] installed window screen was a cause in fact of the injuries of which she complained. For the forgoing [sic] reasons this Honorable Court finds that Tamako Benjamin is entitled to damages in the amount of ... $95,000.00 with interest from the date of judicial demand.
The court of appeal, in a two to one decision, affirmed the trial court judgment, finding that the trial court was not manifestly erroneous in its factual finding that HANO failed in its duty to properly install the window screen, and that the trial court could reasonably conclude that HANO's duty to properly install a window screen does encompass the risk that a child would lean against the window screen. Benjamin ex rel. Benjamin v. Housing Authority of New Orleans, 03-1918 (La.App. 4 Cir. 3/31/04), 871 So.2d 1208. We granted HANO's writ application. Benjamin ex rel. Benjamin v. Housing Authority of New Orleans, 04-1058 (La.7/02/04), 877 So.2d 122.

DISCUSSION
In an action to recover damages for injuries allegedly caused by another's negligence, the plaintiff has the burden of proving negligence on the part of the defendant by a preponderance of the evidence. Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows that the fact sought to be proved is *5 more probable than not. If, as in this case, circumstantial evidence is relied upon, that evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty. Lacey v. Louisiana Coca-Cola Bottling Co., Ltd., 452 So.2d 162, 164 (La.1984); Stroik v. Ponseti, 96-2897 (La.9/9/97), 699 So.2d 1072. This does not mean, however, that it must negate all other possible causes. Lacey, supra (citing Weber v. Fidelity & Cas. Ins. Co. of New York, 259 La. 599, 250 So.2d 754 (1971); Naquin v. Marquette Cas. Co., 2444 La. 569, 153 So.2d 395 (1963)).[4]
In this case, plaintiff has alleged that HANO was negligent in installing the window screen and that its negligence caused Darione to sustain injuries.[5] Negligence cases are resolved under the duty/risk analysis which entails five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) whether the plaintiff was damaged (the damages element). Perkins v. Entergy Corp., 00-1372 (La.3/23/01), 782 So.2d 606, 611.
The duty element is a question of law and this Court has never specifically addressed the duty of a housing authority to its tenants. The court of appeal found that "there was a legal relationship between the parties by virtue of the fact that plaintiffs are tenants of the Lafitte Housing Authority, which is managed by HANO," and thus, "HANO owed plaintiffs a duty to exercise the necessary care and to protect them from dangers within its control." This finding was based on an opinion from the Second Circuit which held that "a housing authority's purpose is to provide safe, decent and sanitary housing and a suitable living environment for families that cannot afford similar housing in the private sector." Mayo v. Audubon Indem. Ins. Co., 666 So.2d 1290, 1294 (La.App. 2 Cir. 1/24/96), writ denied, 96-457 (La.4/1/96), 671 So.2d 325. Accordingly, that court held that "a housing authority *6 owes a duty to exercise the necessary care to its tenants to protect them from dangers within its control." Id. We agree that this is a correct statement of the duty owed by HANO to its tenants under the facts of this case.
Whether the defendant breached that duty and whether that breach was a cause in fact of plaintiff's injuries are factual questions to be determined by the factfinder. A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Perkins, supra at 612 (cites omitted). In order to reverse a trial court's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Id. (citing Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993)). To perform its constitutional duty properly, an appellate court must determine whether the trial court's conclusions were clearly wrong based on the evidence or clearly without evidentiary support. Id. at 613 (citing Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221).
The trial court found that HANO "failed in its duty to proper [sic] install the window screen that ultimately caused plaintiff's injuries" because "a properly attached and installed window screen should withstand tension associated with the slight use of force." The court of appeal held that this finding was not manifestly erroneous and, that this was a cause of the accident because "HANO's duty to properly install a window screen does encompass the risk that a child would lean against the window screen."
The error implicit in each of these findings, which involve both breach of duty and causation, is that there was absolutely no evidence presented that could lead the factfinder to conclude that it was more probable than not that Darione leaned against the window which in turn caused the screen to become unattached from the window frame.[6] As Darione's mother was asleep when the accident occurred and her sister did not testify at trial, any finding as to how the accident occurred is mere speculation. Thus, there was no factual basis for the trial court to conclude that the screen failed to withstand "the slight use of force."
In addition, plaintiff produced no direct evidence that the screen was negligently installed. Instead, plaintiff argues that the screen had to be improperly installed based on her testimony that when she came into the room after Darione fell out of the window, the screen was hanging to one side. However, this evidence falls far short of proving breach of duty or causation. As stated above, where circumstantial evidence is relied upon to prove an element of plaintiff's case, that evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty. See, Lacey, supra at 164. While the screen might have been negligently installed and Darione might have merely leaned against the window screen causing the screen to come loose, plaintiff must prove that it is more probable than not that this is what happened. See Perkins, supra at 618-19. Based on the evidence presented, it is just as likely that the screen was properly installed but that *7 someone else in the apartment unlocked the screen before the accident, that the girls were engaging in normal childhood play and Darione accidently fell against the screen, or that any number of other situations occurred. To conclude that plaintiffs met their burden of proving that HANO breached its duty of care and that this breach caused Darione's injuries is unreasonable and clearly wrong. The trial court findings are not supported by the evidentiary record and are, therefore, manifestly erroneous. See also Fisher v. River Oaks, Ltd., 93-677 (La.App. 5 Cir. 3/16/94), 635 So.2d 1209, writ denied, 94-0932 (La.6/3/94), 637 So.2d 503 (while the evidence showed that a child somehow fell out of a window and that the screen may not have fit the frame of the window tightly, the jury's determination that the window screen did not create an unreasonable risk of harm was not manifestly erroneous).

CONCLUSION
The trial court's finding that HANO failed in its duty to properly install the window screen and that breach of duty caused Darione's injuries is manifestly erroneous because it is clearly without evidentiary support. Plaintiff offered absolutely no evidence to prove that it is more probable than not that HANO negligently installed the screen or that Darione merely leaned against the window which caused the screen to come loose. Based on the evidence presented, it is just as likely that HANO properly installed the screen and some other factor or factors caused Darione to fall out of the window.

DECREE
For the foregoing reasons, the judgments of the lower courts are reversed and plaintiff's petition is dismissed with prejudice.
REVERSED.
KIMBALL, Justice, dissenting.
Because I disagree with the majority's conclusion that the judgment of the trier of fact was manifestly erroneous, I dissent from its decision to reverse the judgments of the lower courts. Plaintiff testified at trial that the screen at issue was installed by a HANO employee two or three days prior to the accident, that the screen appeared to be properly installed prior to the accident, and that the screen was hanging from the top to one side after the accident. The trial court, as the trier of fact, obviously found plaintiff's testimony credible. There was no evidence presented that indicated the screen itself was torn, stretched, or damaged subsequent to the accident. It therefore seems unlikely that horseplay activities by the young children caused the screen to become detached from the window. In light of the necessarily circumstantial evidence presented in the case of this unwitnessed accident, I believe plaintiff sufficiently proved by a preponderance of the evidence that HANO's installation of the screen was negligent and that its negligence caused Darione's injuries. Consequently, I dissent from the majority's judgment reversing the decisions of the lower courts.
NOTES
[1] Although Darione presented at Charity Hospital with the injuries listed on page 1, infra, plaintiff alleged at trial that the fall also caused injury to Darione's urinary tract. Dr. Webster testified that she saw Darione on two occasions, first on January 8, 2001 when she presented with complaints of urinary incontinence, and again on May 8, 2001. Dr. Webster testified that the CT scan taken at the time of Darione's initial evaluation and treatment following the injury reveal "a very small amount of fluid next to one of the iliac arteries" in the abdomen which would "[p]robably [indicate] just a little leakage from the blood vessel." Dr. Webster agreed that this indicated a "probable trauma" in the pelvis. However, on cross-examination she admitted that other tests that would be required to make this diagnosis had not been done, that other tests performed after the accident appeared normal, and that Darione's history of urinary tract infections could affect her incontinence.

On this issue, HANO called Darione's treating physician, who testified that he treated Darione for excessive bed-wetting on March 5, 1998 and that he believed this was caused by continued urinary tract infections caused by poor hygiene. He could not rule out the fall as a cause of this problem because he was not treating her at the time of the accident, but testified that the lack of blood in the urine and the results of a CT scan taken at the time of the accident indicated that she suffered no trauma to her urinary tract as a result of the fall.
Because of our finding that plaintiff failed to meet her burden of proof on other issues, we need not address whether Darione's incontinence was caused by the fall.
[2] She testified that her porch was 50 feet diagonally across from plaintiff's apartment.
[3] At trial, plaintiff produced eight exhibits, which included the records from Charity Hospital, a drawing of the bedroom, a photo of a door, a window and a window pane, medical records and HANO records. However, none of these exhibits were received by this Court or the court of appeal. We note that none of these exhibits purport to show the condition of the screen before the accident or to explain to the fact finder how a screen should be properly installed.
[4] Plaintiff has not alleged that the doctrine of res ipsa loquitur applies in this case and the trial court did not apply that doctrine to the facts of this case. See Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654 (La.1989), for an analysis of that doctrine. Res ipsa loquitur could not properly be applied to this case in any event because plaintiff has not established that the injury is of the type which does not ordinarily occur in the absence of negligence and he has not sufficiently excluded the inference of his own responsibility or the responsibility of others besides the defendant in causing the accident.
[5] This case was tried as a negligence case under La. C.C. art. 2315. However, plaintiff alleged in her petition that plaintiff was also liable for "failing to properly maintain and repair the window and/or 2317 defect of which defendant was aware which caused petitioner's fall and injuries." La. C.C. art. 2317.1 provides as follows:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Because our ruling in this case involves issues common to both causes of action, i.e., breach of duty and causation, our ruling also precludes recovery under La. C.C. art. 2317.1
[6] In fact, there was no evidence presented regarding the manner in which the screen came loose, other than the testimony that it was hanging from one side after Darione fell out.