NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-0311

PEGGY BERGERON

VERSUS

RAPIDES PARISH SCHOOL BOARD, ET AL.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 213,962
HONORABLE ALFRED MANSOUR,  JUDGE PRO TEMPORE

\*\*\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

AFFIRMED.

Walton J. Barnes, II
A Professional Law Corporation
351 St. Ferdinand Street
Baton Rouge, LA 70802
(225) 343-9583
ATTORNEY FOR PLAINTIFF/APPELLANT:
    Peggy Bergeron
Howard B. Gist, III
Gist Firm, A.P.L.C.
Post office Box 13705
Alexandria, LA 71315
(318) 448-1632
ATTORNEY FOR DEFENDANT/APPELLEE:
    Rapides Parish School Board

PETERS, J.

Peggy Bergeron, an employee of the Rapides Parish School Board (School Board), appeals a trial court judgment dismissing her tort suit against the School Board for damages allegedly caused by exposure to toxic mold during the 2002-2003 school year.[1] We affirm.

An employee of the School Board since 1976, Ms. Bergeron was a school secretary. During the school years 2001-2003, the School Board assigned her to its Vance Avenue School facility. That facility consists of two buildings, one two-story and the other one-story, connected by a walkway. During the first year of her two-year assignment to the facility she worked in the two-story building. In August 2002, she was transferred to an office in the one-story building. It was in this office that she encountered stained ceiling tiles and falling dust which she claims contained toxic mold.

In her July 29, 2003 suit against the School Board, Ms. Bergeron alleged that, although the stained ceiling tiles were replaced after she complained, her exposure to toxic mold persisted and her further request for corrective action went unheeded. In her petition, she alleged that her exposure during the 2002-2003 school year caused her to sustain injuries which included aggravated gastritis, epigastic and

---

[1]The jurisprudence reveals that some employees have made claims under the Workers' Compensation Act for workplace injuries based on mold exposure. *See Harper v. Grand Casino Coushatta*, 06-322 (La.App. 3 Cir. 9/27/06), 940 So.2d 911; *Gallo v. St. Tammany Parish Hosp.*, 04-611 (La.App. 1 Cir. 3/24/05), 906 So.2d 1276. Other claimants have brought civil tort actions for personal injuries premised upon the fault of the employer. Ms. Bergeron chose the latter path. The issue of whether mold exposure and its consequences can be covered by the Workers' Compensation Act was specifically addressed in *Ruffin v. Poland Enters., L.L.C.,* 6-0244 (La.App. 4 Cir. 12/13/06), 946 So.2d 695, *writ denied*, 07-314 (La. 4/20/07), 954 So.2d 163, and the court of appeal there held that injuries and illnesses resulting from mold exposure in a clerical job did not fall under the definition of La.R.S. 23:1031.1 of the Workers' Compensation Act and were therefore not compensable as an occupational disease. The court held that the plaintiff, a state employee working for the Department of Social Services in leased office space, could proceed in her delictual action against both the building owner and her employer.

abdominal pain, persistent cough, headaches, skin infection, lung infection, breathing difficulties, itching, and fatigue.

At the May-June 2006 trial, the trial court considered the testimony of seventeen witnesses on behalf of Ms. Bergeron and four on behalf of the School Board. After completion of the evidentiary phase of the trial, the trial court took the matter under advisement. On October 4, 2006, the trial court issued written reasons for judgment in which it concluded that Ms. Bergeron had failed to prove her claim by a preponderance of the evidence. On that same day, the trial court executed a written judgment dismissing Ms. Bergeron's suit against the School Board. Ms. Bergeron appeals this judgment.

In its reasons for judgment the trial court identified Ms. Bergeron's various theories of recovery and correctly defined her burden of proof, as follows:

> Plaintiff asserts several theories of recovery: first, defendants are liable under negligence (as owners of the immovable property, the defendants knew of the unreasonable risk of harm posed by the property and, as such, they had a duty to act but failed to do so); second, the defendants are vicariously liable unto plaintiff because their employees had knowledge of the unreasonable risk of harm posed by their property, and that this knowledge is imputed to the defendants for the acts and omissions of their employees; third, the defendants are strictly liable due to their ownership and custody of the property which contained a defect and which gave rise to a duty to act; fourth, under the doctrine of premise liability, defendants had a duty to keep their premises in a safe condition, which this duty was breached, resulting in the alleged injuries to plaintiff due to a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances; and lastly, the doctrine of res ipsa loquitur.
>
> The plaintiff in a personal injury case bears the burden of proving by a preponderance of the evidence the cause-in-fact of damages. Ms. Bergeron has the burden of proving every essential element of her case, namely: (1) the facility was in the care, custody, and control of the public body; (2) the truancy office had a vice or defect which created an unreasonable risk of harm; (3) the injury was caused by the defect; and (4) the public agency had actual or constructive notice of the dangerous condition.

With regard to the actual physical condition of the one-story building at the Vance Avenue facility, the trial court made the following factual findings:

> The testimony clearly establishes that the Vance Avenue facility had problems. Wilson Dodson, the school's long time custodian, testified that he addressed the complaints made by Ms. Bergeron as well as other employees. Ceiling tiles were changed out in the hallway and some rooms. There is no doubt in the Court's mind that the one story building at the Vance Avenue complex had problems; however, the fact that a ceiling tile is stained or discolored does not necessarily constitute a defect that would impose liability upon defendant.

Both Ms. Bergeron and the School Board provided the trial court with expert testimony. Included within those experts were Dr. Patricia Williams (an expert in the field of anatomy, toxicology, and in determining the etiology and causation of environmental occupational diseases), who testified for Ms. Bergeron, and Dr. Thomas Dydek (an expert in the field of environmental toxicology and human health risk assessments for exposure to chemicals and microbial agents, epidemiology and biostatistics), who testified for the School Board. The trial court evaluated this expert testimony in the following summary:

> Dr. Dydek testified that after reviewing the evidence, he was of the opinion that there was not enough mold to cause health problems, such as those presented by Ms. Bergeron, noting that there was really no significant risk, or even an unreasonable risk which he associates with any objective finding. Further, he testified that he did not consider the evidence presented to justify the conclusion that this is a mold infestation. Based upon observations during trial and the underlying facts, as well as his extensive qualifications and experience, the Court accepts the testimony of Dr. Thomas Dydek.

> Because of his superior qualifications and practical experience, the Court accepts the opinion of Dr. Dydek over that of Dr. Williams. Dr. Williams opined that the mold in the truancy office was the cause of plaintiff's illness. However, Dr. Williams has little, if any, practical experience in her field, as opposed to Dr. Dydek who has hands on practical experience. Further, Dr. Dydek's testimony also demonstrated the mycotoxins Dr. Williams alludes to for her theory of liver damages are not even produced by the several mold varieties found in the truancy office.

The trial court also discussed at length the testimony of other experts who had performed tests and prepared studies of the Vance Avenue facility with regard to the abnormal presence of the mold. These studies specifically addressed the condition of Ms. Bergeron. In these words, the court evaluated that testimony:

> Further, the Court has taken into account the testimony of defendant's witness, John Lechman, a Certified Industrial Hygienist recognized by the American Board of Industrial Hygiene. The Court places greater weight on the testimony of Mr. Lechman than the plaintiff's counterpart, Mr. Glenn Ray, whose qualifications are not as impressive as those of Mr. Lechman. Mr. Lechman was asked by the School Board to participate and observe the plaintiff's court ordered inspection on July 31 and subsequently on August 20. Mr. Lechman conducted a parallel test. Like Dr. Dydek, he testified that the room was not mold infested and that the mold present in Ms. Bergeron's office was to a much larger degree also found outside. The testimony of Dr. Dydek and Mr. Lechman was buttressed by that of Dr. Roy Dowling, a board certified industrial hygienist and environmental engineer, who testified that there is no airborne mold at the Vance Avenue facility to cause concern. Dr. Dowling did note that he did see a few species inside that were not outside, but not to any great magnitude. Accordingly, the Court accepts the testimony of Dr. Dydek, Mr. Lechman, and Dr. Dowling over that of plaintiff's experts.

Finally, the trial court's reasons for judgment examined Ms. Bergeron's medical history. With regard to this evidence, the trial court stated the following:

> Ms. Bergeron has an extensive medical history and suffers from a number of medical conditions that predate assignment to the Vance Avenue facility. Evidence introduced at trial shows that Ms. Bergeron suffered from preexisting conditions, including lupus, epigastric and abdominal pain, coughs, headaches, skin rashes, infection, breathing difficulties, and stress which have manifested over the years from various causes, both before and after her employment at the Vance Avenue facility. Ms. Bergeron has a significant history of extended sick leaves for personal medical reasons, well before ever being assigned to the Vance Avenue facility. In sum, Ms. Bergeron has had other incidents of stress or other medical complaints, both before and after her employment at the Vance Avenue facility.

> The records of Dr. David Remedios, Ms. Bergeron's physician since 1997, do not note that Ms. Bergeron presented any complaints that she attributed to mold. Dr. Remedios referred Ms. Bergeron to Dr. Jonathan Forester, a family practice doctor. Ms. Bergeron presented to

Dr. Forester complaints of periodic fatigue and severe stomach problems. She also reported to him that she had been exposed to toxic mold. Dr. Forester proceeded to do a blood serum Stachybotrys panel, which turned out to be all negative. Dr. Forester also testified that close to one hundred percent of the people in our community have sensitivities to molds and it did not surprise him that Ms. Bergeron has some sensitivity to mold.

In November 2003, Ms. Bergeron went to Dr. Maan Younes, a pulmonologist, and presented a history of mold exposure, but neglected to mention that she had a history of lupus since 1988. Based on this incomplete history, Dr. Younes initially concluded that her complaints may have been mold related. It is only after Dr. Younes performed certain standard tests and advised Ms. Bergeron that her ANA test was elevated and it is usually so when someone has lupus, that she disclosed to Dr. Younes that she has been treated for lupus in the past. Dr. Younes testified that in this case, he cannot tell if this inflamation is because of hypersensitivity pneumonitis or if it is because of a history of lupus.

Factual findings of the trial court may not be set aside in the absence of manifest error or unless they are clearly wrong, and where there is conflict in the testimony, inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). Cause in fact is a factual question to be determined by the factfinder. *Benjamin ex rel. Benjamin v. Hous. Auth. of New Orleans*, 04-1058 (La. 12/1/04), 893 So.2d 1. In order for an appellate court to reverse a factfinder's factual determinations, the appellate court must find that a reasonable factual basis does not exist in the record for the finding and that the record establishes that the finding is clearly wrong or manifestly erroneous. *Stobart*, 617 So.2d 880. "Ultimately, the weight to be given expert testimony is dependent upon the facts on which it is based as well as the professional qualifications and experience of the expert." *Meany v. Meany*, 94-251, p. 10 (La. 7/5/94), 639 So.2d 229, 236. "Credibility determinations,

5

including the evaluation of and resolution of conflicts in expert testimony, are factual issues to be resolved by the trier of fact, which should not be disturbed on appeal in the absence of manifest error." *Hanks v. Entergy Corp.*, 06-477, p. 24 (La. 12/18/06), 944 So.2d 564, 581.

In the reasons for judgment, the trial court chose to credit the expert opinions of Dr. Dydek, Mr. Lechman, and Dr. Dowling over the opinions of Dr. Williams and Mr. Glenn Ray. We find no manifest error in that determination. Thus, after reviewing the record, we find no manifest error in the trial court's determination that Ms. Bergeron did not prove by a preponderance of evidence that there existed a mold infestation in her workplace during the 2002-2003 school year sufficient to amount to an unreasonably dangerous "defect." Similarly, we find no manifest error in the trial court's assessment of Ms. Bergeron's medical history and the testimony of the physicians testifying in the case regarding the causation of her medical problems.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment in all respects. We assess all costs of this appeal to Peggy Bergeron.

**AFFIRMED.**