MAX N. TOBIAS, JR., Judge.
hThe defendants, Steel Grip, Inc. (“Steel Grip”) and John Crane, Inc. (“John Crane”), seek reversal of the trial court’s judgment granting the plaintiffs/ appellees’ motions for summary judgment. For the reasons that follow and based upon our de novo review, we affirm the trial court’s judgment that determined that (1) Raleigh Landry (“Raleigh”) was diagnosed with mesothelioma, (2) asbestos was the cause of the mesothelioma, and (3) mesothelioma was the cause of Raleigh’s death; but reverse the trial court’s judgment that determined that (1) Raleigh was exposed to John Crane’s and Steel Grip’s asbestos-containing products, (2) John Crane’s and Steel Grip’s products were a substantial contributing cause of Raleigh’s development of mesothelioma, and (3) John Crane and Steel Grip are liable under Louisiana law.
In March 2002, Raleigh Landry (“Raleigh”) and his wife, Clailee Aucoin Landry (“Clailee”), filed suit to recover damages arising from Raleigh’s mesothelioma. They alleged that during his working career Raleigh was exposed to asbestos from the use of asbestos-containing products manufactured and sold by defendants, Steel Grip, John Crane (formerly, Crane Packing Co.), and others. Upon Raleigh’s death on 21 November 2002, the lawsuit was amended to assert | {¡survival and wrongful death claims on behalf of Clailee and the Landry’s two children.
Raleigh began his career as a pipefitter in 1959 and continued working until 2001. Raleigh testified that, while he was a pipe-fitter, he was exposed to asbestos while working for J. Ray McDermott, Inc. and Avondale Industries, Inc. Raleigh testified that he used Garlock and John Crane gaskets on a daily basis and that he would “use steel brushes to clean the pipe.” When asked about removing a gasket, Raleigh stated that “you got to undo the pipe, and then you take a scraper and you scrape the old gaskets off, then you take a buffing wheel or a steel brush and clean the facing real well, then you put your new one [gasket] back on.” Raleigh explained that “the dust would be flying just every-wheres [sic]” during the process of installing new gaskets in the pipelines.
Raleigh also testified that he used asbestos gloves made by Steel Grip, Gard-Line, and Olympic and that the gloves would create dust. Specifically, he stated that “after you get through a job, you clap your hands together or either try to take the dust off on the pipe you was [sic] working out of and they would fly just everywhere, you know.”
Raleigh’s co-worker, John Grisaffe (“Grisaffe”), testified that he started working with Raleigh in 1982 at the Exxon Chemical plant in Baton Rouge, Louisiana. He stated that he was a pipefitter and that his first job entailed working with Raleigh to remove tons of pipe insulation. When asked what the work entailed, Grisaffe testified as follows:
Pumps, pipes, flanges, changing out piping in the racks, cutting fireboxes, where you have to get wrapped up in this stuff, where the stuff — so the particles don’t fly out from the welder. When you run out there with a grinder, you’re grinding on pipe, grinding on flanges to [sget a gasket off, everything is high-pressure in the cat-cracker, and it runs about 3000 psi, and the gaskets are so stuck on there that we had to use chisels sometimes, grinders with buffing wheels to get them off.... And then *510 installed new gaskets. Every other job you ask me about will be the same as that answer, I can tell you that.
He explained that the gaskets Raleigh and he worked with were John Crane gaskets and that they contained asbestos.
Grisaffe also testified that he and Raleigh used Steel Grip asbestos gloves and that they were exposed to dust from these gloves:
Q. You also talked about gloves. Did you also use mitts?
A. Yes, and the regular gloves.
Q. Mitts and regular gloves?
A. Yes.
Q. Did you use asbestos gloves at a period of time?
A. Yes, I would say asbestos gloves.
* * *
Q. Did some of the gloves ever have a tag right on the inside of the wrist?
A. Yes.
Q. And did that tag on some of the gloves say Steel Grip?
THE WITNESS: That is the only kind of gloves they had, that I can remember.
Q. Mr. Landry wore the Steel Grip gloves?
THE WITNESS: Yes. We were both doing the same thing.
Q. Of course, when you’d wear the gloves, you would hit them together to—
LA. Oh, yes. You would have to get some of the dust off, you know. You have to wipe your face after.
Q. You would hit them on your clothes?
A. Yes, or the piping on the side of you. The dust is flying everywhere.
On 13 March 2012, the plaintiffs filed a motion for summary judgment alleging that Raleigh had mesothelioma, asbestos was the cause of Raleigh’s mesothelioma, and mesothelioma was the cause of Raleigh’s death. Attached to this motion for summary judgment were the following exhibits: the death certificate of Raleigh; the depositions of Dr. Samuel P. Hammar; Dr. Georgia Reine; Dr. Alvaro Hunt; Dr. Victor Roggli; Frank Parker, III; Dr. James Millette; Thomas A. McGurk; and the affidavit of Dr. Samuel P. Hammar.
On that same date, the plaintiffs also filed a motion for summary judgment alleging that Raleigh was exposed to Steel Grip’s asbestos-containing products, that the exposure was a significant contributing factor in the development of Raleigh’s mesothelioma and death, and that Steel Grip is liable under Louisiana law for Raleigh’s illness and death. Attached to this motion for summary judgment as exhibits were the depositions of Raleigh (25 June and 24 and 26 July 2002); Grisaffe; Frank Parker, III; Dr. James Millette; Dr. Victor Roggli; Thomas A. McGurk; Dr. Samuel P. Hammar; and the affidavit of Dr. Samuel P. Hammar.
The plaintiffs also filed a motion for summary judgment alleging that Raleigh was exposed to John Crane’s asbestos-containing products, that this exposure was a significant contributing factor in the development of Raleigh’s mesothelioma and death, and that John Crane is liable under Louisiana law. Attached to this motion for summary judgment were following as exhibits: the depositions of Raleigh (25 June and 24 and 26 July 2002); Grisaffe; Frank Parker, LIII; Dr. Victor Roggli; George McKillop; Dr. Samuel P. Hammar; the affidavits of Dr. James Millette and Dr. Samuel P. Hammar; the report entitled “Releasability of Asbestos Fibers From Asbestos-Containing Gaskets;” the study of “Environmental Household Exposures to Asbestos and Occurrence of Pleural Mesothelioma;” the article entitled “News & Trends: The second Age of As *511 bestos”; and the report from the “Helsinki Criteria”, 01/20 -22/1997.
On 22 March 2012, the defendants filed three oppositions with exhibits, which included: the depositions of Raleigh, Gri-saffe, George McKillop, Glen Paul Landry, Dr. James Crapo, Dr. William E. Longo, Dr. Samuel P. Hammar, Dr. Victor Roggli; the affidavit of Dr. Michael Matteson; the OSHA Standard For Exposure to Asbestos Dust, Causation Label Exemption, Federal Register Vol. 37; and various reports on the issue of asbestos and human health. The defendants opposed plaintiffs’ motions for summary judgment essentially arguing that genuine issue of material facts exist, and that such evidence should be evaluated by a trier of fact to determine whether (a) mesothelioma was the cause of Raleigh’s death, (b) Raleigh was exposed to John Crane’s and Steel Grip’s asbestos-containing products, (c) John Crane and Steel Grip’s products had a substantial contributing factor to Raleigh’s development of mesothelioma, and (d) John Crane and Steel Grip should be liable under Louisiana law.
After a hearing on 30 March 2012, the trial court granted the plaintiffs’ motions.[1] Specifically, the trial court found that there was no question of fact that: (1) Raleigh had mesothelioma; (2) asbestos was the cause of Raleigh’s | ^mesothelioma; (3) mesothelioma was the cause of Raleigh’s death; (4) Raleigh was exposed to Steel Grip’s and John Crane’s asbestos-containing products; (5) Raleigh’s exposure to Steel Grip’s and John Crane’s asbestos-containing products was a significant factor in his mesothelioma and death; and (6) Steel Grip and John Crane are liable under Louisiana law. The defendants do not dispute the fact that Raleigh was diagnosed with mesothelioma, and that asbestos was the cause of the meso-thelioma. Although John Crane does not appeal the trial court’s finding that meso-thelioma was the cause of Raleigh’s death, Steel Grip does appeal this finding arguing that an issue of fact exists regarding whether mesothelioma was the sole cause of Raleigh’s death.
John Crane and Steel Grip argue on appeal that the trial court erred in granting the summary judgments finding that Raleigh was exposed to its asbestos-containing products (the John Crane gaskets and the Steel Grip gloves) and that its asbestos-containing products were a significant factor contributing to Raleigh’s meso-thelioma and death.
It is scientifically proven, and legislatively recognized, that a causal relationship exists between asbestos exposure and the occurrence of mesothelioma. In Hennegan v. Cooper/T. Smith Stevedoring Co., 02-0282 (La.App. 4 Cir 12/30/02), 837 So.2d 96, this court acknowledged that brief exposures to asbestos may cause mesothelio-ma in persons decades later and that every non-trivial exposure to asbestos contributes to and constitutes a cause of mesothe-lioma. This theory, has been embraced in the Supreme Court’s decision in Rando v. Anco Insulations, Inc., 08-1163, 08-1169 (La.5/22/09), 16 So.3d 1065. Moreover, as the Court said:
|7... Louisiana courts have employed a “substantial factor” test to determine whether exposure to a particular asbestos-containing product was a cause-in-fact of a plaintiffs asbestos-related disease. Thus, in an asbestos case, “the claimant must show ... he had significant exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury.” Mesothelioma can develop after fairly short exposures to asbestos. Simply be *512 cause a plaintiff suffered asbestos exposure while working only a short period for an employer and he had longer exposure working for others, it cannot be said the relatively short asbestos exposure was not a substantial factor in causing his mesothelioma. However, notwithstanding the difficulty of proof involved, a plaintiffs burden of proof against multiple defendants in a long-latency case, such as a tort claim for mesothelioma, is not relaxed or reduced because of the degree of that might ensue in proving the contribution of each defendant’s product to the plaintiffs injury. [Emphasis added; internal citations omitted.]
Rando, pp. 35-36,16 So.3d at 1091.
Steel Grip argues on appeal that the trial court erred in granting summary judgment in favor of the plaintiffs because there are genuine issues of fact regarding whether the sole cause of Raleigh’s death was mesothelioma, whether Raleigh was exposed to Steel Grip’s asbestos containing products, whether the alleged exposure was a significant contributing factor to Raleigh’s development of mesothelioma, and whether the trial court erred in interjecting its personal work experience as a shipyard employee rather than relying on the evidence. Steel Grip also argues that the trial court erred in finding Raleigh’s meso-thelioma was the cause of his death. Steel Grip agrees Raleigh had mesothelioma and that his mesothelioma was caused by exposure to asbestos; however, it wishes to preserve for the jury whether mesothelio-ma was the sole cause of Raleigh’s death since he also suffered from cancer of the kidney and pancreas, emphysema, congestive heart failure, and diabetes.
| ^According to Raleigh’s death certificate, he died from “malignant mesothelio-ma.” Not only do plaintiffs’ experts testify that mesothelioma was the cause of Raleigh’s death, but defendants’ own expert, Dr. Victor Roggli, testified as such. Based on the testimony of experts on both sides, we find no genuine issue of fact as to the cause of Raleigh’s death; thus, we affirm the summary judgment finding that meso-thelioma was the cause of Raleigh’s death.
Steel Grip argues that there are genuine issues of material fact concerning whether Raleigh was exposed to its asbestos products. Although Steel Grip does not dispute that Raleigh testified that he used Steel Grip’s gloves and that the gloves contained asbestos, Steel Grip argues that Raleigh’s testimony is hearsay and inadmissible.
Without detailing the evidence submitted by both parties regarding whether Steel Grip gloves were or were not a substantial factor in causing Raleigh’s meso-thelioma or whether Raleigh’s testimony is hearsay and inadmissible, we find that genuine issues of material fact exist precluding the granting of summary judgment for (a) the amount of asbestos that may have been emitted from the Steel Grip gloves and (b) whether such emission was or was not a substantial factor in causing Raleigh’s mesothelioma; these are questions of fact for the trier of fact in this case. The evidence before us can be said to preponderate both for and against both the plaintiffs and Steel Grip. Read in a reasonable light, the testimony that, following working as a pipefitter with Steel Grip gloves, the gloves would be clapped together and dust would fly preponderates more to establish that the dust came from the materials that Raleigh was working with and not necessarily from the gloves themselves; although a possibility exists that some of the dust came from the asbestos in the gloves themselves. Accordingly, we reverse the trial |9court’s finding Steel Grip’s product was a significant factor in Raleigh’s mesothelioma and death and *513 thus Steel Grip is liable under Louisiana law; the issue must be submitted to a trier of fact at trial.
On appeal, John Crane argues that the trial court erred in granting summary-judgment in favor of plaintiffs because there are genuine issues of fact regarding whether Raleigh was exposed to John Crane’s asbestos-containing products and whether the alleged exposure was a significant contributing factor to Raleigh’s development of mesothelioma.
Again, without detailing the evidence submitted by both parties regarding these issues, we find that genuine issues of material fact exist precluding the granting of summary judgment as to whether Raleigh was exposed to John Crane’s asbestos-containing products that were a significant factor in his mesothelioma and death, thus creating liability under Louisiana law. Raleigh worked at a facility where John Crane products were present; some of the products contained asbestos while others did not. The quantity of John Crane asbestos-containing products that he came into contact with is not clearly shown by the evidence before us; thus genuine issues of material fact exist. We cannot say that whatever quantity of John Crane asbestos-containing product Raleigh came into contact with was a substantial factor in his contracting mesothelioma that caused his death. We acknowledge the existence, however, of circumstantial evidence[2] that reasonable minds might conclude preponderates to establish that Raleigh did come into contact with John Crane asbestos-containing products, but the evidence does not |intip the scales on a motion for summary judgment in favor of the plaintiffs. The issues are properly determined at a trial on the merits.
For the foregoing reasons, we affirm the trial court’s judgment determining that Raleigh was diagnosed with mesothelioma, asbestos was the cause of the mesothelio-ma, and mesothelioma was the cause of Raleigh’s death. We reverse the trial court’s judgment determining that Raleigh was exposed to John Crane’s and Steel Grip’s asbestos-containing products and that John Crane’s and Steel Grip’s products were a substantial contributing cause of Raleigh’s development of mesothelioma, thus making either or both of them liable under Louisiana law. We remand for further proceedings.
AFFIRMED IN PART; REVERSED IN PART.
BELSOME, J., concurs in part and dissents in part.

. The judgments were certified as final and appealable pursuant to La. C.C.P. art. 1915.

. See Rando, p. 33, 16 So.3d at 1089, citing Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 664 (La.1989) and Benjamin ex rel. Benjamin v. Housing Authority of New Orleans, 04-1058, p. 5 (La. 12/1/04), 893 So.2d 1, 4.